## Speyer *against* The New-York Insurance Company.

Goods were insured from *New-York* to *Bourdeaux*. The policy contain-ed the usual printed clause, "to be free from any loss which may arise, in consequence of a seizure or detention, for or on account of any illicit or prohibited trade ;" and also the following written clause : "warranted not to abandon, if turned away, nor if captured, until condemned." While on her voyage, the vessel was captured and sent into *England*. On the 18th of *November*, 1803, the ship and cargo were released, and the ship afterwards proceeded on her voyage, and reached *Verdun*, in *France*, at the entrance of the *Garonne*, the 16th of *January*, 1804. The vessel and cargo were seized and detained by the officers of the *French* government, at *Bourdeaux*, and she was not suffered to unlade any part of her cargo, and was afterwards ordered to leave the territory of *France* ; the reason assigned for the prohibition and sending away, was, that the ship had come directly from *England*. The ship and cargo, by order of the consignees, went to *St. Sebastians*, in *Spain*, where part of the cargo was sold, and the ship, afterwards, went to *Bourdeaux*, in ballast, and the residue of the cargo, unsold at *St. Sebastians*, was shipped to *Bourdeaux*, and there sold. On being advised of the situation of the vessel and cargo at *Bourdeaux*, the insured abandoned, on the 18th of *May*, 1804, as for a total loss. It was held, that under the written clause in the policy, the insured was not entitled to recover as for a total loss, but only for a partial loss, for expenses and average, from the time of capture, until her arrival at *Bourdeaux*. But as to the effect of such a prohibition, without such a special clause in the policy, *quere*.

THIS was an action on a policy of insurance *on goods*, (78 bales of cassia and 67 bags of cocoa) on board the ship *Young Eagle*, *from New-York to Bourdeaux*. The

cause was tried at the sittings, in *June*, 1806, held in *New-York*, before Mr. Justice *Thompson*. A verdict was taken for the plaintiff, subject to the opinion of the court, on the following case: The policy was dated the 24th of *August*, 1803, and the *cargo was valued* at 3,370 dollars, the sum insured. At the foot of the policy there was the following clause in writing: "*Warranted not to abandon, if turned away, nor if captured, until condemned.*" The rest of the policy was in the usual printed form. It was proved, (but the question as to the competency of the proof reserved) that the terms *turned away*, as understood by assurers and assured generally, and by the parties, at the time, meant a restraint or hindrance of the vessel from proceeding to her port of destination, by a blockading force, and was not understood to apply to the restraints or acts of the government, at the port of destination. The ship sailed from *New-York*, the 28th of *August*, 1803, on the voyage, with the cargo on board, belonging to the plaintiffs; and both ship and cargo were *American*. On the 3d day of *October*, 1803, she was boarded, detained, and sent into *England*, on suspicion of having enemy's property on board. She arrived at *Bristol*, in *England*, the 22d of *October*, 1803; and on the 18th of *November*, the ship and cargo were released, on payment of the expenses. The ship then proceeded on her voyage, and on the 16th of *January*, 1804, she reached *Verdun*, at the entrance of the *Garonne*, and was there detained by the *French* commodore, until the 27th of *January*, and then ordered to leave the river; because, the orders of the *French* government were, not to permit any vessel coming direct from *England* to enter a *French* port. The vessel was preparing to leave the river, when the ship and cargo were seized by the *French* officers of the customs, and sent up to *Bourdeaux*, and there detained, until the 13th of *March*, 1804, when they were released; but the master was forbidden to unlade any part of his cargo, and ordered to depart from *France*. The cause of this

conduct on the part of the *French* government was, that the ship had come directly from *England*, and the fact of the *forcible* carrying into, and detention in *England*, was not allowed to be any excuse. The ship then proceeded, by order of the consignees, to *St. Sebastians*, in *Spain*. Having left *Bourdeaux* the 18th of *April*, she arrived at *St. Sebastians* the 21st of *April*, 1804, where the cargo was delivered to a mercantile house, to which the master was addressed. On the 10th of *May*, the ship sailed for *Bourdeaux*, in ballast. Fifty-six bags of cocoa, and 14 bales of cassia, belonging to the plaintiff, were sold at *St. Sebastians ;* but, as sales could not be made there, without great sacrifice, the residue of the cargo was, on the 24th of *August*, 1804, shipped to *Bourdeaux*, where it arrived early in *September*, and a part was sold in *September*, and part in *January* following. The plaintiff, being advised from *Bourdeaux*, by a letter, dated the 30th of *March*, 1804, of the situation of the vessel and cargo, abandoned, on the 18th of *May*, 1804, and made the usual proofs of loss and interest. Large expenses were incurred, during the detention at *Bourdeaux*, which were general average.

It was submitted to the court to decide, whether the plaintiff was entitled to recover for a total or partial loss, or for a total loss and average, or for a partial loss and average, and in either case, the court might appoint two persons, to adjust the amount and average, and report the same to the court.

*S. Jones*, jun. for the plaintiff. There can be no doubt that the plaintiff is entitled to recover, for his proportion of the expenses and charges, consequent to the capture by the *British*, and also for the expenses and average loss occasioned by the arrest and detention in *France*. The main question is, whether the acts of restraint of the *French* government do not furnish a just ground of abandonment, so as to entitle the plaintiff to recover for a total loss. That this is a peril within the policy, is evident, from the language of the instrument itself. The words are general ; *arrests, restraints* and *detainments*, of all

kings, princes, &c.. This applies to all kinds of restraint, not caused by the act of the insured.

ALBANY,
Feb. 1808.

Speyer
v.
New-York Ins.
Company.

The contract of insurance continues until the goods are safely landed. It continues during a quarantine, or any other necessity or peril, which prevents the landing of the cargo. The going to *St. Sebastians* was compulsory, and a necessary consequence of being ordered to depart from *France*. The insurer, by his contract, undertakes for the entry at the port of delivery, unless prevented by some fraud or misconduct of the insured. The words of the policy apply to all restraints; as blockades, embargoes, &c. An *embargo* is considered, not only as a prohibition to depart, but an exclusion of ships from entering the ports; and, in either case, is a just cause of abandonment.[*] Unless, therefore, there is some special clause in the policy, to restrain the general words, they must be considered as protecting the insured in this case.

[*] *Park,* 78.
*Lex Mer.* 4th ed. 268.

The printed clause is, " to be free from any loss which may arise, in consequence of a seizure or detention for, or on account of, any illicit or prohibited trade." Here was no attempt to trade; the going with goods from *England* to *France* was not voluntary, but resulting from the capture. The plaintiff cannot be said to have violated the true spirit and meaning of the *French* ordinance; for, where a person is compelled by superior force, to do a certain act, he cannot be said to be guilty of an offence. Necessity always excuses, in cases of insurance. The insured, therefore, cannot be said to come within the printed clause, as to illicit trade.

Then, what is the meaning of the written clause, as to being *turned away?* It must refer to a case of blockade; the belligerent ships always indorse on the register, the words, " turned away."

*Hoffman.* This point is not disputed.

*Jones.* We contend, then, that the arrest, at the mouth of the *Garonne,* and the denial of liberty to land the cargo, created a just cause of abandonment, and that all the subsequent proceedings, which were a consequence of the

ALBANY,
Feb. 1808.

Speyer
v.
New-York Ins.
Company.

vessel's being ordered away, were at the risk of the defendants.

*Hoffman* and *Harison*, contra. Though the right to claim an average loss is not disputed, it is necessary to decide on its extent, or the principle by which it is to be computed.

As to the abandonment. Every nation or sovereign has a right to allow, or refuse trade with other nations, except on certain terms or conditions. This right may be exercised illiberally, or improperly, still the nation is to judge as to the propriety of the measure, and is not accountable to any other for its conduct. The insured, after the capture, knowing of the prohibition of the *French* government, was not bound to proceed to *France*, but might have put an end to the voyage. If the *French* had seized the vessel for illicit trade, would it not have been within the clause contained in the policy? But the vessel was, in fact, restored and in the possession of the master, in *May*, 1804, so that the abandonment could not be made on account of any *arrest* or *seizure*. If the insurer is to be made answerable for a total loss, as a consequence of the capture, then the clause in the policy against abandonment, in case of capture, until after condemnation, would be nugatory. The question, then, is reduced to this, whether a mere denial of entry, or to trade, at the port of delivery, is a peril within the policy? The right of the *French* government to refuse an entry to vessels, so circumstanced, is not to be controverted here. In the case

* 1 Johnson, 181.

of *Suydam & Wyckoff* v. *The Marine Insurance Company,** it was decided, that a denial of entry at *St. Jago de Cuba*, was not a peril within the policy. The same principle is

† 1 Johnson, 249.

recognized in *Schmidt* v. *The United Insurance Company.*† The refusal may, perhaps, excuse a deviation, in going to another port, on the ground of necessity; but the insured take upon themselves the risk of the right to trade. There is not a case to be found, where it has been decided, that a denial of entry, or to trade, was a ground for abandonment. If, then, the refusal of an entry, or a permission

‡ Scott v.
Thompson, 1
Bos. & Pul. N.
S. 181.

to trade, is not a peril within the policy, the capture, or its consequences, will not vary the question.‡

*Jones*, in reply. A refusal of an entry, is a refusal to permit the goods to be landed. If they cannot be landed, the voyage is defeated and lost, without any fault of the insured, who has a right, therefore, to abandon. In the case of *Suydam & Wyckoff* v. *The Marine Insurance Company*, it was admitted, that the trade with *Cuba*, a *Spanish* colony, was generally prohibited; and Mr. Justice *Livingston*, who appears to have had serious doubts, decides on the circumstances of that case, which are different from the present.

The true meaning of the clause relative to capture, is, that, in that event, the insured is to wait the decision of the court, and not abandon, unless there be a condemnation. If carried to the extent contended for by the other side, the insured could not abandon, if the vessel had been released after a capture, even though she should be afterwards lost by the perils of the sea. It does not appear, from the case, that the insured had any knowledge of the *French* decree. Even had it been known, it was fairly to be presumed, that it would never receive so monstrous a construction, as to exclude vessels bound direct from the *United States* to *France*, that had been forcibly carried into *England*.

KENT, Ch. J. delivered the opinion of the court. This policy is stated to be the usual printed cargo policy, and, consequently, as I understand it, contains the usual printed clause, " to be free from any loss which may arise, in consequence of a seizure, or detention for, or on account of any illicit or prohibited trade." It was upon this clause, that the court determined, in the case of *Suydam & Wyckoff* v. *The Marine Insurance Company*, (1 *Johnson*, 181.) that the denial of an entry at *St. Jago*, the port of destination, was not a loss within the policy. The policy before us, has also another clause, of some moment in the present case, and that is a warranty, " not to abandon if turned away, nor if captured, until condemned." It seems to be agreed, that the turning away here, applies only to the case of a blockade; and we may waive any consideration of that part of the warranty. The question,

ALBANY,
Feb. 1808.

Speyer
v.
New-York Ins.
Company.

then, is, whether under the operation of these two clauses of the policy, the plaintiff had a right to abandon, in consequence of the proceedings at *Bourdeaux*, and to claim a total loss, as for a loss of voyage. I cannot distinguish this case from that of *Suydam & Wyckoff* v. *The Marine Insurance Company*. Here was a seizure and detention, a prohibition to enter, and a turning away, for illicit or prohibited trade ; and this was the very case excepted by the policy from the rule. The reason and grounds of this prohibition are not open for investigation. The plaintiff assumed the risk of such a peril upon himself. What would have been the effect of the prohibition without such a special clause in the policy, is another question, on which I give no opinion. The decision in *Suydam & Wyckoff* v. *The Marine Insurance Company*, was founded on this special warranty in the policy, and I form my present opinion upon the ground of this special provision.

But it is contended, that the prohibition and turning away from *Bourdeaux*, were in consequence of the *British* capture. If this be admitted, it was not a case for abandonment ; for no abandonment was to be made in case of capture, until condemnation. In my opinion, then, the plaintiff has precluded himself from turning this case into a total loss, and is entitled only to claim a partial loss, for expenses and average, to be computed from the capture, until the arrival at *Bourdeaux ;* and a reference must be made to proper persons to adjust, and report the amount, for which judgment is to be rendered. The defendant cannot be responsible for subsequent events. The risk terminated at *Bourdeaux*, for the policy did not provide for a continuation of risk, in case of a prohibition to enter, founded on an illicit trade, nor for leave for the plaintiff to go elsewhere. The prohibition to enter, under the special provision in the policy, was equivalent to an actual termination of the risk, by the landing of the goods. The policy had completely spent itself, when the prohibition intervened. The plaintiffs are to answer only for the previous losses.

Judgment for the plaintiff, for a partial loss.